UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CUSTOM CORRUGATED & SUPPLY, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-3132** |
| **AXIS SURPLUS INSURANCE COMPANY** | **SECTION "B"(1)** |

**ORDER AND REASONS**

Before the Court are defendant Axis Surplus Insurance Company's motion for partial summary judgment on loss or damages related to the roof (Rec. Doc. 19) and defendant's motion for partial summary judgment on plaintiff's claims for business personal property and related bad faith claims (Rec. Doc. 21). For the following reasons,

**IT IS ORDERED** that defendant's motion for partial summary judgment on loss or damages related to the roof (Rec. Doc. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion for partial summary judgment on plaintiff's claims for business personal property and related bad faith claims (Rec. Doc. 21) is **GRANTED IN PART**, as to bad-faith claims related to business personal property.

**IT IS FURTHER ORDERED** that **no later than September 18, 2024** plaintiff shall supply to defendant an inventory list of allegedly damaged business personal property. Failure to do so will result in the dismissal without prejudice of plaintiff's business personal property claim.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Claiming damages related to Hurricane Ida, plaintiff filed a state court action against its insurer for breach of contract and good faith duty. Plaintiff alleges it supplied satisfactory proof of property damage amounting to $984,637.55, but defendant has tendered only $105,036.46. Rec. Doc. 1-1 at 2–3 ¶¶ 13–14. Without providing specifics, plaintiff also contends it "has additionally

1

incurred cost to repair and/or replace damaged business personal property, which is also covered by the policy." *Id.* at 4 ¶ 26. Finally, plaintiff claims a loss of "substantial business income" due to repair delays. *Id.* at 4 ¶ 27. In addition to policy payments, plaintiff seeks compensatory damages, lost profits, statutory penalties, costs, attorney's fees, and legal interest. *Id.* at 7. In a pre-suit demand letter, plaintiff also asserts penalties of $492,318.78 and attorney's fees of $590,782.53—for a total demand in excess of $2 million. *See* Rec. Doc. 1-5.

Defendant timely removed the case pursuant to diversity jurisdiction of 18 U.S.C. § 1332. *See* Rec. Doc. 1 at 3–4. After complying with the requirements of the Eastern District of Louisiana's Streamlined Settlement Program of the Hurricane Ida Case Management Order, this case remained unresolved and returned to the district court docket. *See* Rec. Doc. 12.

Defendant now moves for partial summary judgment on loss or damages related to the roof, *see* Rec. Doc. 19, and on plaintiff's claims for business personal property and related bad faith claims, *see* Rec. Doc. 21. Plaintiff filed no timely oppositions.

## II.  LAW AND ANALYSIS

### A.  Motion for Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). However, even if not accompanied by an affidavit, material in support or opposition of a motion for summary judgment may be considered as long as it is "*capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Courts view all facts and evidence in the light most

favorable to the non-moving party, but "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008).

"[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Bargher v. White*, 928 F.3d 439, 444–45 (5th Cir. 2019). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

### B. Unopposed Motion Standard

In the Eastern District of Louisiana, a respondent that opposes a motion "must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date." Local Rule 7.5. Here, the submission date of defendant's motions for partial summary judgment was August 28, 2024, setting plaintiff's deadline to oppose as August 20, 2024. Plaintiff did not so oppose.

The Court "may properly assume that [plaintiff has] no opposition" to the motions for partial summary judgment, and may grant defendant's requests if they have merit. *Smith v. Larpenter*, No. 16-15778, 2017 WL 2773662, at *1 n.1 (E.D. La. May 3, 2017), *report and recommendation adopted*, No. 16-15778, 2017 WL 2780748 (E.D. La. June 26, 2017). Put another

way, a district court may not grant unopposed motions automatically, but may grant them if the motions have merit. *See Braly v. Trail*, 254 F.3d 1082, 2001 WL 564155 at *2 (5th Cir. 2001).

### C. Louisiana Insurance Claims

This insurance dispute was removed to federal court on the basis of diversity jurisdiction of 28 U.S.C. § 1332. *See* Rec. Doc. 1 at 3–4. "A federal court sitting in diversity applies the substantive law of the forum state, in this case Louisiana." *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). Under Louisiana law, in a dispute over the interpretation of an insurance policy issued in the state, Louisiana substantive law controls. *See Lamar Advert. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005).

In Louisiana, "[a]n insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code." *Bonin v. Westport Ins. Corp.*, 2005-0886 (La. 5/17/06), 930 So. 2d 906, 910 (citation omitted). Further, the policy "should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Carrier v. Reliance Ins. Co.*, 1999-2573 (La. 4/11/00), 759 So. 2d 37, 43 (quotation and citation omitted). If the insured shows that coverage applies, then the insurer has the burden to prove an exclusion bars coverage. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 359 (5th Cir. 2010) (citing *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 123–24 (La. 2000)).

### D. Roofing Coverage Waiver

Defendant contends roof-related damage is expressly excluded from plaintiff's policy. Citing the insurance policy's "Total Roofing Exclusion Endorsement," defendant argues plaintiff's claims of building and personal property damage are circumscribed by the limiting language. *See* Rec. Doc. 19-1 at 2 (reproducing Rec. Doc. 4-1 at 62). Listing the three commercial structures

covered by the policy, the exclusion states the "Covered Property does not include 'roofs' of buildings and structures shown in the Schedule above." *Id*. Further, the endorsement excludes "loss or damage caused by or resulting from the condition of the roof of the buildings and structures". *Id*. Finally, the exclusion defines "roof" to mean "roof coatings, roof canopies, or any material or components used in conjunction with a roof's construction or re-covering, including but not limited to, shingles, tiles, cladding, shakes, flashing, sheeting, sheathing, decking insulation, joists, trusses, and membranes." *Id*.

However, defendant's actions appear to differ from the exclusion endorsement. To its business personal property-related motion, defendant attaches two correspondences to plaintiff, both related to a September 6, 2021 inspection. *See* Rec. Doc. 21-6 (Nov. 17, 2021); Rec. Doc. 21-7 (Dec. 6, 2021)[1]. The prepared Estimate of Loss was based on, *inter alia*, "inspection findings, conversations with the insured, and subject to Insurers' coverage considerations." Rec. Doc. 21-6 at 2. In its explanation of its adjustment, defendant's adjusting firm includes roofing considerations in the assessment of both Building One and Building Two coverage: "The scope of repairs includes removal and replacement [sic] 3 roll up doors, gutters, *roofing repairs*, siding repairs, painting and insulation", *id.* at 5 (Building One) (emphasis added); "[t]he scope of repairs includes repair of 3 roll up doors and *roof insulation*", *id.* (Building Two) (emphasis added). The December correspondence provides similar details: "The required repairs include removal and replacement [sic] 3 roll up doors, gutters, *roofing repairs*, siding repairs, painting and insulation", Rec. Doc.

---

[1] Minimally, the second correspondence omits its second page. *See* Rec. Doc. 21-7 at 2 (listing its second page as "Page 3" and stamping itself "AXIS 0201" after the first page is stamped "AXIS 0199"). Likely, the correspondence also omits pages that follow, as it ends without a signature block or various headings contained in the first correspondence. *See* Rec. Doc. 21-6 at 6–7 (containing headings such as "Recommendations" and "Plan of Action"). We consider it for the limited purpose of presenting notice of the same estimate of loss to plaintiff.

The correspondences themselves, moreover, are material appropriate for consideration with either motion for partial summary judgment, as they are "materials in the record" capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)(A), (c)(2).

21-7 at 2 (Building One) (emphasis added); "[t]he required repairs include repair of 3 roll up doors and *roof insulation*", *id.* (Building Two) (emphasis added). Repair estimates for the buildings are the same in both correspondences, *compare* Rec. Doc. 21-6 at 5 *with* Rec. Doc. 21-7 at 2, and the full inspection report provides $82,530.80 as the total estimate of loss, *see* Rec. Doc. 21-6 at 2. In its petition, plaintiff admits defendant tendered payment of $105,036.46. Rec. Doc. 1-1 at 3 ¶ 14. Taking together the tendered payment and the stated adjustment considerations, we conclude defendant provided some form of roof coverage to plaintiff, despite the language of the "Total Roofing Exclusion Endorsement."

Under Louisiana law, waiver is "the intentional relinquishment of a known right, power, or privilege." *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So. 2d 1213, 1216. An insurer "is charged with knowledge of the contents of its own policy." *Id.* (citations omitted). An insurer's waiver "may bring within coverage risks originally excluded or not covered." *Tate v. Charles Aguillard Ins. & Real Est., Inc.*, 508 So. 2d 1371, 1375 (La. 1987). To establish coverage waiver, an insured must show (1) inconsistent and misleading conduct on the part of the insurer and (2) prejudice to the insured. *See Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1026–27 (5th Cir. 2012) (citations omitted) (applying Louisiana law). Reliable proof is necessary for the establishment of each element. *See Tate*, 508 So. 2d at 1375. Prejudice to the insured is generally shown through actual harm or detrimental reliance. *Sosebee*, 701 F.3d at 1029–30.

In its answer, defendant raises the Total Roofing Exclusion Endorsement as an affirmative defense. Rec. Doc. 4 at 4. However, in its initial assessment of the claim, defendant's adjuster included roofing-related damages in its estimate calculations. *See* Rec. Doc. 21-6 at 5; Rec. Doc. 21-7 at 2. Further, it is uncontested that payment was made in connection with the findings of defendant's adjuster. *See* Rec. Doc. 1-1 at 2–3 ¶¶ 9 (citing inspection documentation), 14 (tender

6

of $105,036.46). Despite being charged with knowledge of its policy, defendant paid damages related to plaintiff's roof. This inconsistent behavior is plainly misleading, opening defendant to coverage "originally excluded or not covered." *See Tate*, 508 So. 2d at 1375.

However, faced with plaintiff's silence on the issue, we cannot determine prejudice thereby suffered. If anything, plaintiff received a benefit from defendant's roof-related tender, obtaining some payment it would not otherwise. Absent is any allegation of actual harm done, such as plaintiff's repair of its roof damage in a more fortified manner due to a promise of extra coverage. Accordingly, despite defendant's inconsistent actions, we cannot find it waived its contractual right to the roofing-related exclusion. The damage payments previously tendered are not subject to repayment or offset, but broader roof coverage is not established by a waiver. The language of the "Total Roofing Exclusion Endorsement" is clear: damage to the roof or caused by the roof is excluded by the policy. Viewing the evidence in the light most favorable to plaintiff, no genuine issue of material fact exists as to the policy exclusion, and defendant is entitled to judgment on the issue as a matter of law.

### E.  Business Personal Property Breach of Contract

Defendant also contends plaintiff fails to establish any claim for business personal property because plaintiff only submitted such a property claim on one piece of machinery—for which defendant tendered payment within thirty (30) days of notice. The machinery at issue—a "single bending machine"—allegedly began malfunctioning after Hurricane Ida; however, defendant insists it "was never provided with the invoice for the new double bending machine or any related documentation prior to April 18, 2024." Rec. Doc. 21-1 at 2. In attached deposition testimony, Lyndsey Scallan, owner of Custom Corrugated & Supply LLC,[2] testified that the invoice for the

---

[2] Defendant does not substantially address, provide proof of, or cite to the record to substantiate plaintiff's ownership interest or administrative structure. Repeatedly in its motion for partial summary on plaintiff's claims for business

replacement machinery was not provided to defendant prior to April 18, 2024 and that defendant tendered the invoice amount, after deductible application, on May 1, 2024. *See* Rec. Doc. 21-2 at 14–15.

In Louisiana, a breach of contract is found where (1) an obligor has a performance due, (2) the obligor fails to perform the obligation, and (3) the failure to perform causes damages to the obligee. *See IberiaBank v. Broussard,* 907 F.3d 826, 835 (5th Cir. 2018) (quotation omitted). "To state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision." *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002) (affirming dismissal for failure to state a claim for breach of contract). General, conclusory allegations that an insurer paid an insufficient amount or improperly applied policy provisions "are insufficient to state a plausible breach of contract claim." *Hibbets v. Lexington Ins. Co.*, 377 F. App'x 352, 355 (5th Cir. 2010).

Although defendant argues there has been no satisfactory proof of loss for business personal property, its correspondence from the September 6, 2021 inspection, in some manner, indicates otherwise. "The insured reported of possible damage to raw and finished product and would be check [sic] with the warehouse supervisors to confirm if and the extent of damage. It was noted that one desk in the office sustained water damage from water entering the open siding." Rec. Doc. 21-6 at 4. For the observed damage, the adjuster supplies a coverage estimate of $30,000.00 for contents in Building One. *Id.* at 1. As stated previously, it is uncontested that

---

personal property and related bad faith claims, it cites deposition excerpts of Lyndsey Scallan and Jonathan Scallan. In a footnote, defendant explains their relationship to plaintiff and each other: "Though Mrs. Scallan owns the company, she testified that she handles the administrative matters while her husband is the 'boots on the ground' person who deals with the machinery." Rec. Doc. 21-1 at 2 n.7 (citing Rec. Doc. 21-2 at 2–3 (deposition of Lyndsey Scallan)).

defendant's tender was made in connection with the findings of defendant's adjuster. *See* Rec. Doc. 1-1 at 3 ¶ 14.

Louisiana caselaw has defined "proof of loss" more widely than the formal filing of a claim. The Louisiana Supreme Court has described the standard as "that which is sufficient to fully apprise the insurer of the insured's claim." *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985). Undoubtedly, it is an insured's obligation to "relay that information to the insurer." *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So. 2d 1012, 1020–21. Nevertheless, an insured can meet the requirement of submission of proof of loss through fewer formalities than claim submission, even by permitting an insurer onto the property. *See Om Sai Ram Hosp. LLC v. AmGuard Ins. Co.*, No. 21-2999, 2023 WL 4380762, at *2 (W.D. La. July 6, 2023). Defendant's adjuster inspected the property and was alerted to damage to business personal property. Thus, the facts are distinguishable from caselaw cited by defendant, where an insured never allowed property inspection, did not have an accrued claim, and filed for breach of contract prematurely. *See Club Delux Apartments, LLC v. Westchester Surplus Lines Ins. Co.*, No. 24-369, 2024 WL 1991496, at *5 (E.D. La. May 6, 2024) (Africk, J.). Here, defendant's argument that plaintiff made no claim related to business personal property is unavailing.

However, defendant repeatedly has requested information on other asserted business personal property damage. Plaintiff's failure to fully cooperate in the claim investigation has slowed the resolution of this action. Nonetheless, "a cooperation clause is emphatically not an escape hatch that an insurer may use to flee from liability. It is most certainly not the law of Louisiana that any failure to comply with the policy conditions, no matter how trivial, will relieve an insurer from liability under the policy it drafted and issued." *Jackson v. State Farm Fire & Cas. Co.*, No. 06-7202, 2010 WL 724108, at *8 (E.D. La. Feb. 22, 2010) (Vance, J.). In evaluation of

9

any cooperation clause breach, the insurer must show materiality and prejudice suffered therefrom—both based on an analysis of the case-specific facts. *Id.* (citations omitted). Louisiana courts are hesitant to dismiss an insured's claim at the summary judgment stage due to violation of the cooperation clause. *See Trosclair v. CNA Ins. Co.*, 637 So. 2d 1168, 1170 n.2 (La. Ct. App. 4 Cir. 1994) ("We have reservations concerning whether summary judgment is ever appropriate where an insurer claims a devolutive condition (refusal to cooperate) became operative, terminating the insurer's contractual obligations. It seems that the issue will always be a factual one that should be decided by a trial on the merits or by directed verdict.").

The December correspondence from defendant's adjuster indicated that a list of damage inventory and business personal property was still pending. Rec. Doc. 21-7 at 2. "Upon receipt we will review and forward our findings to your office. Attached, is the email we sent to the insured contact, Lyndsey Scallamn [sic] outlining the necessary information. This includes mitigation documentation and list of damaged BPP items." *Id.* (emphasis omitted). In her deposition, Mrs. Scallan admitted she was unaware of any other business personal property submissions to defendant before the April 18, 2024 invoice. Rec. Doc. 21-2 at 17–18 ("Q. I'm just wondering do you have any personal knowledge as to anything that was actually submitted before this invoice? A. Yeah, not to my knowledge I don't."). Mrs. Scallan testified that inventory damage amounted to "[t]housands of dollars", that plaintiff had "video and photos" of the damaged material, but that she had not produced or ever seen documentation on the inventory loss amount. *Id.* at 4–5. Jonathan Scallan additionally testified that plaintiff "may have had some damage to inventory, but we did not track that." Rec. Doc. 21-4 at 2; *see also id.* at 5 ("Q. So as we sit here today, you recall that there was some sort of damage to the trim inventory. But you can't tell me how much of it? What happened to it? Or you don't believe—you don't know of any documentation of it? A.

10

Correct. Q. And you don't know of any documentation that was ever submitted to the insurance company for that? A. Correct."). Instead, Mr. Scallan stated that plaintiff would know of inventory damage when a customer arrived and part of their order had to be remade. *Id.* at 6. Mr. Scallan had not seen a list of those remade orders but believed plaintiff's office manager, foreman, and product loaders kept such a list. *Id.* ("I haven't seen it. But I think that they made that list. I believe that they did."); *see also id.* at 9 (Mr. Scallan stating being unaware of any documentation of trim inventory damage and being generally aware of metal panel inventory "be[ing] tracked via invoices of having to do remakes").

Based on these deposition admissions and case-specific facts, plaintiff must supplement its discovery on the business personal property claim or suffer its dismissal. Although defendant's inspection in the immediate aftermath of Hurricane Ida alerted it to inventory damage, plaintiff has waited nearly three (3) years to supply a factually supported calculation of business personal property damage. Failure to supply defendant with the inventory list **no later than September 18, 2024** will lead to the dismissal of this claim without prejudice.

### F. Good Faith Duty Related to Business Personal Property Claim

However, any business personal property-related bad-faith claims must be dismissed. Tied to breach-of-contract concerns, Louisiana insurers owe "a duty of good faith and fair dealing" to their insureds. La. Rev. Stat. § 22:1973(A). Such a duty is breached, *inter alia*, where an insurer fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." *Id.* § 22:1973(B)(5); *see also id.* § 22:1892(B) (providing an alternative thirty-day framework where coverage denial is "arbitrary, capricious, or without probable cause"). The United States Fifth Circuit Court of Appeals has observed Louisiana law requires the

establishment of three elements: "(i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious." *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009) (quoting *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 2004-1339 (La. App. 4 Cir. 2/2/05), 896 So. 2d 230, 233). Due to the penal nature of the action, the Louisiana Supreme Court has held the bad-faith statute "should be strictly construed." *Baack v. McIntosh*, 2020-01054 (La. 6/30/21), 333 So. 3d 1206, 1217.

Both Lyndsey Scallan and Jonathan Scallan admitted that no documentation supportive of business personal property damage was submitted other than the invoice for the bending machine. *See* Rec. Doc. 21-2 at 17–18; Rec. Doc. 21-4 at 5. Defendant tendered that payment within thirty (30) days of the invoice submission. *See* Rec. Doc. 21-8. Although defendant was aware plaintiff alleged a broader business personal property claim, defendant has not received necessary supportive documentation. Any denial of additional coverage, therefore, could not be considered arbitrary and capricious. Plaintiff's bad-faith claims as they relate to business personal property fail as a matter of law.

New Orleans, Louisiana, this 28th day of August, 2024

_____
SENIOR UNITED STATES DISTRICT JUDGE