UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CUSTOM CORRUGATED & SUPPLY, LLC**                                **CIVIL ACTION**

**VERSUS**                                                         **NO. 23-3132**

**AXIS SURPLUS INSURANCE COMPANY**                                 **SECTION "B"(1)**

## ORDER AND REASONS

Before the Court are defendant Axis Surplus Insurance Company's ("**AXIS**") motion for partial summary judgment on plaintiff's claims for loss of business income (Rec. Doc. 30), plaintiff Custom Corrugated & Supply, LLC's ("**Custom**") opposition (Rec. Doc. 34), and defendant's reply (Rec. Doc. 39). Considering also oral argument received during hearing of the foregoing, the following order and reasons are issued.

**IT IS ORDERED** that defendant's motion for partial summary judgment on plaintiff's claims for loss of business income (Rec. Doc. 30) is **GRANTED**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Claiming damages related to Hurricane Ida, plaintiff filed a state court action against its insurer for breach of contract and good faith duty. *See* Rec. Doc. 1-1. Plaintiff alleges it supplied satisfactory proof of property damage amounting to $984,637.55, but defendant has tendered only $105,036.46. Rec. Doc. 1-1 at 2–3 ¶¶ 13–14. Without providing specifics, plaintiff also contends it has "lost substantial business income" due to repair delays. *Id.* at 4 ¶ 27. In addition to policy payments, plaintiff seeks compensatory damages, lost profits, statutory penalties, costs, attorney's fees, and legal interest. *Id.* at 7. In a pre-suit demand letter, plaintiff additionally asserts penalties of $492,318.78 and attorney's fees of $590,782.53—for a total demand in excess of $2 million. *See* Rec. Doc. 1-5.

1

Defendant timely removed the case pursuant to diversity jurisdiction of 18 U.S.C. § 1332. *See* Rec. Doc. 1 at 3–4. After complying with the requirements of the Eastern District of Louisiana's Streamlined Settlement Program of the Hurricane Ida Case Management Order, this case remained unresolved and returned to the district court docket. *See* Rec. Doc. 12.

Following the removal, defendant filed several motions, including: a motion for partial summary judgement on loss or damages related to roofs, Rec. Doc. 19, a motion for partial summary judgment regarding business personal property claims and related bad faith under business personal property coverage, Rec. Doc. 21, and a motion in limine to exclude estimate for repairs already completed, Rec. Doc. 22. On August 30, 2024, defendant's motion for partial summary judgment on loss or damages related to the roof was granted. Rec. Doc. 25. It was further ordered that defendant's motion for partial summary judgment on plaintiff's claims for business personal property and related bad faith claims, Rec. Doc. 21, was granted in part, as to the bad-faith claims related to business personal property. Rec. Doc. 25. Finally, on September 3, 2024, defendant's motion in limine to exclude evidence from trial related to estimate for repairs already complete was granted as unopposed and meritorious. Rec. Doc. 26.

Defendant now moves for partial summary judgment on plaintiff's claims for loss of business income. *See* Rec. Doc. 30. Plaintiff opposes to which the defendant replied. *See* Rec. Docs. 34 and 39.

**LAW AND ANALYSIS**

   **A. Motion for Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see*

*also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Material in support or opposition of a motion for summary judgment may be considered if it is "*capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Courts view all facts and evidence in the light most favorable to the non-moving party, but "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008).

Where the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Bargher v. White*, 928 F.3d 439, 444–45 (5th Cir. 2019). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

**B. Louisiana Insurance Claims**

This insurance dispute was removed to federal court based on diversity jurisdiction of 28 U.S.C. § 1332. *See* Rec. Doc. 1 at 3–4. "A federal court sitting in diversity applies the substantive law of the forum state, in this case Louisiana." *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446,

3

448 (5th Cir. 2014). Under Louisiana law, in a dispute over the interpretation of an insurance policy issued in the state, Louisiana substantive law controls. *See Lamar Advert. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005).

To determine Louisiana law, courts look to decisions by the Louisiana Supreme Court. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Absent guidance, they must determine "how [the Louisiana Supreme Court] would resolve the issue if presented with the same case." *Id.* To do so, courts "must employ Louisiana's civilian methodology, whereby [they] first examine primary sources of law: the constitution, codes, and statutes." *Id.* Additionally, courts must also consider that in Louisiana's civilian system jurisprudence and existing caselaw are considered a secondary law source, thus not strictly binding on this Court.

### C. Damages pursuant to La. R.S. § 22:1973

Louisiana Revised Statute § 22:1973 provides that "[a]n insurer . . . owes to his insured a duty of good faith and fair dealing." LA. STAT. ANN. § 22:1973 (2024). An insurer may breach this statute by failing to pay a claim within sixty days after receipt of satisfactory proof of loss when such failure is arbitrary, capricious, or without probable cause. LA. STAT. ANN. § 22:1973(B)(5) (2024). "To recover statutory penalties, the plaintiff must establish three elements: (i) that the insurer received a satisfactory proof of loss; (ii) that the insurer failed to pay the claim within the applicable statutory period; and (iii) that the insurer's failure to pay was arbitrary and capricious." *Armond v. Foremost Insurance Co. Grand Rapids Michigan*, No. 22-4291, 2024 WL 5047502 (W.D. La. Dec. 9, 2024) (*see Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009); *quoting Cotton Bros. Baking Co. v. Indus. Risk Insurers*, 941 F.2d 380, 386 (5th Cir. 1991)).

"Louisiana Supreme Court has equated the phrase 'arbitrary, capricious, and without probable cause' to "vexatious" and determined that an insurer acts in that capacity when 'its willful

4

refusal of a claim is not based on a good faith defense.'" *Id.* (quoting *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2D 1250, 1253 (La. 1993)). Thus, "statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107857 (La. 10/21/03), 857 So.2d 1012, 1021). Due to the penal nature of the action, the Louisiana Supreme Court has held that the bad-faith statute "should be strictly construed." *Baack v. McIntosh*, 2020-01054 (La. 6/30/21), 333 So. 3d 1206, 1217.

On August 28, 2024, this Court issued an Order. Rec. Doc. 25. In that Order, the Court stated that Custom needed to supply AXIS with an inventory list of allegedly damaged business personal property for its coverage claim. *Id.* Failure to do so would result in dismissal without prejudice of plaintiff's business personal property claim. Further, it was ordered that defendant's motion for summary judgment (Rec. Doc. 19) was granted in part, as to bad-faith claims related to coverage of business personal property. In that Order, the Court noted that the defendant had not received necessary supportive documents to address coverage of any other business personal property claims and ordered the plaintiff to submit any further claims no later than September 18, 2024. Rec. Doc. 25 at 12. Further, the Court stated that any bad-faith claims related to business personal property coverage failed as a matter of law. Then, on November 5, 2024, Custom stipulated that AXIS had tendered in full all covered damages for business personal property. Rec. Doc. 30-3.

In its current motion, defendant argues that the Order prevents Custom from recovering business income loss. Specifically, defendant argues that Custom is prevented from this recovery because the Order prevents bad-faith claims related to business personal property. Further, defendant argues that Custom's business income loss claim relies solely on the malfunctioning of

one piece of machinery—a "single bending machine"—for which defendant tendered payment within thirty (30) days of Custom filing its claim. Defendant asserts that plaintiff lacks testimony, evidence, or expert opinion to show that the bending machine was damaged due to the property's condition after the storm. *See* Rec. Docs. 39.

As already asserted, if the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden again shifts to the nonmoving party, who then must submit or refer to evidence showing that a genuine issue exists. *See Id.* at 324. The nonmovant may not rest upon the pleadings but must provide specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325.

In its opposition, the plaintiff does not provide specific facts to establish that a genuine issue exists regarding its bad-faith claim. Instead, plaintiff offers a conclusory rebuttal that defendant has confused this Court's previous Order, Rec. Doc. 25, and its La R.S. §22:1973 claim survives despite said Order. Specifically, Custom asserts that due to AXIS' untimely payments on the property damage claim, Custom incurred lost business income. This business income loss, according to Custom, resulted from the condition of their property following the defendant's delayed payments, which allegedly caused their machinery to malfunction, e.g., the single bending machine. Rec. Doc. 34 at 1. Nonetheless, Custom has not provided any evidentiary proof that the machinery malfunctioned due to their facilities conditions after the storm. *See* Rec. Doc. 39.

Notably, Custom's designated representative Lyndsey Scallan testified that mitigation efforts were completed by September. Rec. Doc. 30-2 at 7; Rec. Doc. 39 at 3 (Q: [ ] have been the last day they finished mitigation on premises 2, right, based on the document? A: Based on the

document, yeah. Q: And does that kind of comport with your recollection that all of the drying out had been done by September 29th on both premises? A: I believe so, yes. (The year was not specified.)) Further, in the same deposition, Lyndsey Scallan offered that prior to Hurricane Ida, there was no air-conditioning unit utilized in the warehouse where said machine was housed. Rec. Doc 34-2 at 2 (A: we did have to work after hours when the weather was cooler to try to help with the machine overheating. Q: Okay. A: And had to give a lot of breaks. So that's why they are having to push their end of days back. Q: Okay. I saw – I think I saw a video, and it's kind of like a warehouse-looking place, right? A: Yes. Q: Was there an air-conditioning unit in that warehouse before Hurricane Ida? A: No, not before. Q: Okay. Did you-all end up putting one in after? A: We did a whole warehouse AC now.) Additionally, Custom's representative could not indicate whether air-conditioned areas, certain humidity levels, or temperature levels are known to affect the machine's functionality. *See* Rec. Doc. 39-1 at 5 (Q: Are you aware of there being any humidity or temperature tolerance that's recommended for the machine? A: Not that I'm aware of. Q: There aren't any requirements that it be operated in an air-conditioned area? A: No. Q: Was using the air conditioner to cool it down something that the manufacturer recommended or required, or was that just something you-all decided to do? A: We were just trying to alleviate the heat. But they didn't say we needed to do that.) Following the storm, plaintiff admits that the single bending machine's workload increased dramatically. *See* Rec. Doc. 39-1 at 2. Furthermore, despite the increased workload, alleged conditions in the shop, and allegations of the machine's underperformance, plaintiff still managed to sell the machinery for a significant sum, ninety thousand dollars ($90,000). Rec. Doc. 30-4 at 7.

The record shows that Custom's increased workload and related impact on its capabilities to fulfill or obtain orders were not due to any actions or inactions by AXIS . *See* Rec. Docs. 30 and

39. Capacity constraint in the construction industry is not a new phenomenon but are often significantly amplified in the aftermath of natural disasters such as hurricanes. Profit loss has not been shown here and were it shown there is no showing that it resulted from the hurricane or destruction of insured property. As the plaintiff has failed to offer reasoning for their claim, the Court can only deem that Custom likely suffered a loss in business opportunity due to their capacity limitations, but these losses would have occurred even after plaintiff's property was repaired or in the absence of any property damage. Even assuming the bender machine malfunctioned not because of overuse but because of exposure, that would be a speculative jump due to the absence of admissible supportive evidence.

Based on plaintiff's own deposition admissions and case-specific facts, shown above, plaintiff's bad-faith claim regarding the alleged untimely payment of the property damage claim, along with the business income claim based on the business personal property—the alleged malfunctioning single bender machine— results in the granting of summary judgment. Material factual disputes on the latter issue has not been shown to exist in this record.

New Orleans, Louisiana, this 19th day of December, 2024

SENIOR UNITED STATES DISTRICT JUDGE